# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:19-cv-00091-FDW

| | |
|---|---|
| **BRICE CHRISTOPHER MOORE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | **ORDER** |
| ) | |
| **H. CORPENING, et al.** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983. [Doc. 1]. See 28 U.S.C. §§ 1915(e)(2); 1915A. Also pending before the Court are the following:

(1) Plaintiff's Motion for Appointment of Counsel [Doc. 3];

(2) Plaintiff's Motion for Immediate Help from the Court [Doc. 6];

(3) Plaintiff's Motion for a Court Order to Have Five Cells Ventilation System Dropped by Professional H-VAC Company for Bacteria Testing and Bacteria Device Testing [Doc. 7];

(4) Plaintiff's Motion to Bring to the Courts Attention on the Grievance Response No: 3730-2019-EU4C-00417 on Stating that Brice Moore Made This Same Claim as Well [Doc. 8];

(5) Plaintiff's Motion for the Court to have the ventilation unit dropped to certain inmates cells location for fecals bacteria examination and DNA testing [Doc. 10];

(6) Plaintiff's Motion to the Court of Charlotte North Carolina to Receive the Federal Judge Name for the Western District of McDowell County. Not the District Judge, But Federal. Reasons Explain Below [Doc. 12]; and

(7) Plaintiff's Motion to Put the Court on Notice of the Only Remedy Plaintiff Have Left is Commit a Violent Crime to be Removed from Marion Correctional to H-Con Lock-Up Facility Away from These Infective Ventilation of Fecal Bacteria [Doc. 13].

On May 2, 2019, the Court entered an order waiving the initial filing fee and directing monthly payments be made from Plaintiff's prison account. [Doc. 15]. Thus, Plaintiff is proceeding in forma pauperis.

## I. BACKGROUND

Pro se Plaintiff Brice C. Moore ("Plaintiff") is a prisoner of the State of North Carolina, currently incarcerated at Marion Correctional Institution (MCI) in Marion, North Carolina. Plaintiff filed this action on March 22, 2019, pursuant to 42 U.S.C. § 1983, naming the following as Defendants: (1) H. Corpening, identified as the Superintendent of MCI; (2) FNU Watkins, identified as the Assistant Superintendent of MCI; and (3) Thomas Hamilton, identified as Assistant Unit Manager at MCI. [Doc. 1 at 2].

Plaintiff brings a claim against Defendants complaining of his conditions of confinement in violation of his Eighth Amendment rights. [Doc. 1]. Plaintiff also brings a First Amendment retaliation claim against Defendant Hamilton. [Id.]. The allegations in Plaintiff's 35-page Complaint are summarized as follows: Thomas Hamilton is the Assistant Unit Manager for E-Unit Restrictive Housing for Segregation Lock-Up at MCI. [Id. at ¶ 6]. Since May 2018, Plaintiff has complained of a "strong smell" and "toxic bacteria" coming from the prison's ventilation system as a result of the placement of fecal matter in the ventilation system by certain gang members. [Id. at ¶¶ 31-32, 54, 122-23]. Plaintiff contends these gang members are conspiring to create uninhabitable conditions, forcing Plaintiff to move to Rehabilitative Diversion Unit (RDU).[1]

---

[1] The RDU program at Marion "was created as part of [the North Carolina Department of Public Safety]'s recent policy reforms regarding restrictive housing in the North Carolina prisons." Covington v. Lassiter,

Specifically, Plaintiff alleges:

> 123. The [gang member] inmate/s uses the bathroom, put on gloves or nothing at all, scoop the fecals out of their toilet, places it inside a milk carton, or another container such as a plastic bottle where their hygiene product comes in, mix it with urine or water to make a liquid substance out of it, let it set up for days or weeks to receive it's strength, and then squirts it inside the ventilation system. Then they stop up the vents in every cells where they are housed in, that causes the fumes to force it way through the ventilation system, and to every cell inside that cell block. They then takes Muslim oil that they purchase out of the canteen commissary to make inscents to burn inside there cell, to down the strength inside their cells. Purchases of oil from the canteen here on lock-up will verify this statement.

[Id. at ¶ 123]. Plaintiff contends, however, that if he were to move to RDU the gang members would kill him.[2]

Plaintiff alleges that Defendant Hamilton has willfully and purposefully ignored and created false reports in relation to Plaintiff's complaint regarding the bacterial contamination of the air entering his cell through the prison ventilation system. Defendant Hamilton is also known to make inmate grievances disappear. [Id. at ¶¶ 46, 54-55]. Defendant Hamilton has gone so far as to implicate Plaintiff's mental health in response to Plaintiff's complaints regarding the ventilation system, stating that Plaintiff had "persistent and delusional beliefs that there is fecal matter coming out of the vents…." [Id. at ¶ 55]. Further, Defendant Hamilton stated that Plaintiff appears to be quite paranoid in his behaviors and comments regarding other inmates. [Id.].

---

No. 1:16-cv-387, 2017 WL 3840280, at *5 (W.D.N.C. Sept. 1, 2017). RDU is a "new unit designed to house people who are already in RHCP or HCON or who are about to be placed into one of these classifications. In contrast to the restrictive conditions of RHCP, with extremely limited out-of-cell time and no programming, the RDU is a step-down unit with targeted behavioral programming, expanded privileges, congregate activity, and increasing out-of-cell time. Id. at *6.

[2] In Case No. 1:18-cv-00146-FDW, this Court found Plaintiff's allegations regarding a world-wide gang hit on Plaintiff's life wholly unsubstantiated and held that Plaintiff's § 1983 claim for failure to protect did not survive initial review.

3

Plaintiff further alleges that several other officers have investigated the smell in Plaintiff's cell and agree that it smells of feces. While some of these officers have reported and/or given statements regarding these observations, Defendant Hamilton prevents them from documenting their observations and/or alters their reports regarding the condition and threatens Plaintiff that he will make the officers "deny everything." [Id. at ¶¶ 57-65, 69-70, 74-75, 81, 117, 136-38]. Plaintiff was coerced into dismissing other cases he has filed with this Court because of various threats by Defendant Hamilton. [Id. at 50-52, 139]. Specifically, Plaintiff alleges that he dismissed Case Nos. 1:19-cv-00005-FDW,[3] 1:18-cv-191-FDW, and 1:18-cv-00310-FDW "only for his safety." [Id. at ¶¶ 50-52]. On this point, Plaintiff alleges as follows:

> 49. Plaintiff has filed at least four cases here against Marion Correctional Institutional. Two or three of those cases are involving Thomas Hamilton. And now this case also.
>
> 50. Plaintiff was forced by threats to withdraw the cases against Marion Correctional by Thomas Hamilton, to either drop the cases if I wanted protection here at Marion Correctional from the Gang Members, and to be free from the problem with the ventilation system. When you drop them then we can talk.
>
> 51. And if you don't drop them, I will make you out to be a Mental Health Patient, and they will believe me. Every single word I say. We control your food, I have them to put you on all kinds of medication for Mental Health purpose by telling them that you're going to hurt yourself or others. You're in our hands so think about it very seriously.
>
> …
>
> 80. [On or around March 9, 2019] Upon speaking with Thomas Hamilton, he stated to me that he didn't give a shit if I dropped dead in that cell, drop all lawsuits and we can talk and try to do something about this problem. Other than that, their's nothing to talk about, and do the [RDU] Program.

---

[3] Case No. 1:19-cv-00005-FDW remains pending and will be addressed by the Court in a separate order. In Case No. 1:18-cv-00191-FDW, Plaintiff filed a "Motion for Voluntary Dismissal" after the Court ordered the case dismissed as duplicative of 1:19-cv-00005-FDW. Case 1:18-cv-00310-FDW was dismissed by this Court for failure to state a claim upon which relief could be granted.

> And we aren't protecting your ass from nobody here. Deal with it, or break! And then stated out loud that nobody is putting anything inside the ventilation system. This was done to alert the Gang Members that I'm so called snitching. And that will also make sure my life was in even greater danger.

[Id. at ¶¶ 49-51, 80].

Plaintiff also makes claims against Defendants Corpening and Watkins. Although Plaintiff concedes that Defendants Corpening and Watkins did not "physically participat[e] in these unlawful acts," he argues they knew of Plaintiff's unconstitutional conditions of confinement and failed to act to correct the conditions. [Doc. 1 at ¶ 116]. Specifically, Plaintiff alleges that Defendant Corpening was notified on May 7, 2018 through various grievances, letters, request forms, and other "supporting evidence" that fecal matter is being placed in the prison's ventilation system. Further, Defendant Corpening has done nothing to address or correct the situation. [Id. at ¶¶ 31-35]. As to Defendant Watkins, Plaintiff alleges that Defendant Watkins told the Plaintiff that Plaintiff could be free from the bacteria in the ventilation system if Plaintiff would move to the D-Unit in the RDU program. [Id. at 98-99]. Plaintiff asserts that, since May 7, 2018, Defendants Hamilton, Watkins, and Corpening have been determined "to keep [the situation] concealed." [Id. at ¶ 126].

As for Plaintiff's injuries resulting from the constant exposure to foul-smelling air tainted with fecal bacteria, Plaintiff alleges that he suffers from daily migraine headaches, declining health, is spitting up blood, and has experienced uncharacteristic rage as a result of his constant migraines.[4] [Id. at ¶¶ 58, 66-67, 93; Docs. 1-1, 1-4 at ¶ 9].

---

[4] In Case No. 1:19-cv-00005-FDW, the Plaintiff alleged other additional injuries, including lightheadedness, increased blood pressure, dizziness, loss of appetite, nausea, vomiting, and blurred vision, as a result of his exposure to fecal bacteria. [Case No. 1:19-cv-5-FDW (Doc. 1 at

5

Plaintiff brings claims against all Defendants for violations of his Eighth Amendment rights based on his conditions of confinement and his right to be free from cruel and unusual punishment. Plaintiff also brings a claim against Defendant Hamilton for violation of Plaintiff's First Amendment right "to be free from retaliation for filing report complaints, filing grievances, and filing lawsuits." [Id. at 145-149]. Plaintiff seeks injunctive relief, declaratory relief, and damages. In his Complaint, the Plaintiff also asks the Court to order MCI to preserve certain video and documentary evidence.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

---

¶¶ 22, 26)]. He did not allege these additional injuries in the instant Complaint.

## III. DISCUSSION

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Rather, extreme deprivations are required, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.3d 1375, 1381 (4th Cir. 1993).

The Court finds Plaintiff's Eighth Amendment claims against Defendant survive initial review. That is, taking Plaintiff's allegations as true for purposes of this initial review, the Plaintiff states an Eighth Amendment claim against Defendant Hamilton based on Plaintiff's allegations that, for over a year, Defendant Hamilton has been aware, refuses to address, and is willfully concealing the fact that the air released into Plaintiff's cell smells strongly of feces and is contaminated with fecal bacteria, which the Plaintiff is forced to breath and which is causing the Plaintiff serious, adverse health conditions.

As to Defendants Corpening and Watkins, there is no liability under § 1983 under a theory of respondeat superior. See Monnell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). As such, to hold these Defendants responsible, Plaintiff must allege facts that tend to show that these Defendants' actions, or omissions, led to his injury. See West v. Tillman, 496 F.3d 1321, 1332

(11th Cir. 2007) (per curiam). Here, Plaintiff alleges that Defendants Watkins and Corpening were actually aware of the alleged conditions, did nothing to address them, and in fact actively concealed their existence. As such, at this stage of the proceedings, Plaintiff's Eighth Amendment claims against Defendants Watkins and Corpening may proceed.

Also, to the extent that Plaintiff is alleging that Defendant Hamilton is retaliating against him for filing grievances and lawsuits by threatening the Plaintiff's safety and intentionally failing to address his complaints regarding Plaintiff's conditions of confinement, Plaintiff's retaliation claim survives initial review, as it is not clearly frivolous. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533 (4th Cir. 2017).

Thus, the Court will allow this action to go forward on initial review.

In his Complaint, the Plaintiff also requests "an injunction for Marion Correctional to hold all Video Footages on the dates on all grievances filed, and all the statement written by officials concerning the toxic smell exiting the ventilation system." [Doc. 1 at ¶ 157]. The Court construes this request as a motion for the preservation of evidence. In his motion, Plaintiff seeks an order from this Court requiring Defendants to preserve relevant evidence in this action, including videotape footage and documentary evidence. The Court finds that an order requiring Defendants to preserve evidence is unnecessary because Defendants already have a duty to preserve evidence. Under the doctrine of spoliation, parties have a duty to preserve (including a duty to not destroy) evidence when litigation is filed or becomes reasonably anticipated. See Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001); Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 509 (D. Md. 2009). To fulfill the duty to preserve relevant evidence, "[o]nce a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy

and implement a "litigation hold" to ensure the preservation of relevant documents." Id. at 511. Here, if Defendants destroy any exculpatory evidence, they will be subject to sanctions. However, because they are already under a duty to preserve evidence, an order from this Court is not necessary. Accord Wright v. Webber, C/A No. 1:11-2199-TLW-SVH, 2011 WL 6112371, at *3 (D.S.C. Nov. 10, 2011) ("Plaintiff has not shown that he will suffer irreparable damage if an injunction does not issue, as Defendants already have a legal duty to preserve existing evidence when a lawsuit is filed."); McNair v. Ozmint, C/A No. 3:07-3470-HFF-JRM, 2008 WL 2128121, at *4 (D.S.C. May 20, 2008) (denying a motion for a temporary restraining order to preserve cassette tapes because there already existed a duty to preserve material evidence).

As such, the Plaintiff's motion for the preservation of evidence will be denied because MCI already has a duty to preserve such evidence without a court order.

## IV. PLAINTIFF'S MOTIONS

### A. Motion for Appointment of Counsel

In support of the motion to appoint counsel, Plaintiff states, among other things, that the issues involved in his case are complex and will require significant research and investigation. Plaintiff states he has limited access to the law library and limited knowledge of the law. Plaintiff also argues that a trial would likely involve conflicting testimony, and counsel would allow Plaintiff to better present evidence and cross examine witnesses. A plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). The Plaintiff here has not presented exceptional circumstances that justify appointment of counsel. Therefore, Plaintiff's motion to appoint counsel [Doc. 3] will be denied.

B.     **Plaintiff's Other Motions**

Plaintiff has filed several other motions and documents in this matter since filing his original Complaint. [See Docs. 6, 7, 8, 10, 12, & 13]. To the extent the Court can distill Plaintiff's requests, it addresses them here. Although not necessarily captioned in ways that reflect the Plaintiff's actual requests, it appears that the Plaintiff seeks three actions by the Court: (1) an order that the ventilation system feeding Plaintiff's cell be disconnected so as to prevent the flow of infected air into Plaintiff's cell and that the ventilation system in E-Unit Restrictive Housing[5] be tested for the presence of fecal bacteria; (2) in the alternative, to order that Plaintiff be transferred to Polk Correctional Institution in Butner, North Carolina, for relief from his current conditions of confinement; and (3) an order that a video camera be placed facing Plaintiff's cell so that all interactions between Plaintiff and any officers would be captured. The Court construes these requests as motions for preliminary injunctions.

A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, the plaintiff must establish

---

[5] In his Complaint, the Plaintiff also alleges that he has been moved to C-Unit Restrictive Housing at MCI. [Doc. 1 at ¶ 140]. It appears, however, that Plaintiff contends that the condition of placement of fecal matter in the ventilation system is present throughout segregated housing. As such, it does not appear that Plaintiff's movement to a different unit is necessarily relevant.

(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009). The Court should balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant. The balance of harm evaluation, however, should precede the determination of the degree by which the plaintiff must establish the likelihood of success on his part. Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 813-14 (4th Cir. 1991). "Until that balance of harm has been made, the district judge cannot know how strong and substantial must be the plaintiff's showing of 'likelihood of success.'" Id. at 814 (citation omitted).

Here, Plaintiff alleges significant, worsening and ongoing physical suffering as a result of his alleged exposure to fecal bacteria in the air he breathes. Plaintiff requests the simple result of disconnecting the ventilation unit feeding his cell. The Court sees little to no harm suffered by Defendants in accommodating Plaintiff's request. As such, because failing to grant an injunction may cause Plaintiff substantial further harm and because little to no harm will be suffered by Defendants in granting the request, the Plaintiff need not show a substantial likelihood of success on the merits. The Plaintiff's allegations here, which if true, allow Plaintiff's Complaint to proceed past initial review, are enough under the specific facts and circumstances of this case. Further, the Court sees no public consequence to affording Plaintiff this specific relief while this matter is pending adjudication. The Court, therefore, will grant Plaintiff this injunctive relief in accordance with the terms of this Order. While the Court lacks sufficient information to make an overly technical and specific order regarding the Plaintiff's request, the Court orders MCI to disconnect Plaintiff's ventilation unit and cease the flow of potentially infected air into Plaintiff's cell. The

Court also orders that the officials at MCI shall implement other measures to allow for the circulation of air in Plaintiff's cell should they prove necessary.

Reviewing Plaintiff's motion for bacterial testing based on the above factors, the Court concludes that the Plaintiff is not entitled to this preliminary injunctive relief. The balance of harm evaluation is far less weighted in Plaintiff's favor on this request. Such testing would be of significant expense to MCI. Further, if testing were to support Plaintiff's allegations of the placement of fecal matter in the ventilation system by gang members, undoubtedly expensive remediation of the system would have to be undertaken to result in any actual difference to the Plaintiff. He has not requested such remediation, in any event. As such, in order to be entitled to preliminary injunctive relief, Plaintiff must show a much more substantial likelihood of success on the merits. At this stage, Plaintiff presents nothing more than allegations of his word against those of various prison officials.

Next, as for Plaintiff's motion seeking transfer away from Marion Correctional Institution, a prisoner has no constitutional right to be housed in a particular facility. Olim v. Wakinekona, 461 U.S. 238, 244-46 (1983). Plaintiff alleges that he needs to be transferred from MCI for "his safety" and for relief from his alleged conditions of confinement. Apart from allegations regarding physical effects from the fecal bacteria exposure, Plaintiff has presented nothing more than conclusory allegations that his safety is at risk. This is not enough to warrant transfer to another prison. Further, given the Court's order to disconnect Plaintiff's ventilation system, Plaintiff's motion for transfer is even less warranted. The Court will therefore deny Plaintiff's motion for preliminary injunction to transfer the Plaintiff from MCI.

Finally, the Court will deny Plaintiff's request for a preliminary injunction for the placement of a video camera outside of his cell. The Plaintiff has not sufficiently shown any

likelihood of irreparable harm in the absence of this relief.

**V.     CONCLUSION**

In sum, the Court finds that this action survives initial review.  See 28 U.S.C. §§ 1915(e)(2); 1915A.

   **IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's allegations survive initial review.  See 28 U.S.C. §§ 1915(e); 1915A.

2. This Court recently enacted Local Rule 4.3, which sets forth a procedure to waive service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners.  The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants, who are current or former employees of NCDPS.

3. Plaintiff's motion for the preservation of evidence is **DENIED** in accordance with the terms of this Order.

4. Plaintiff's Motion for Appointment of Counsel [Doc. 3] is **DENIED**.

5. Plaintiff's motions [Docs. 6, 7, 8, 10, 12, & 13] are **GRANTED IN PART** and **DENIED IN PART**.  These motions are **GRANTED** insofar as the officials at Marion Correctional are ordered to disconnect the Plaintiff's ventilation unit in accordance with the terms of this Order. These motions are **DENIED** insofar as Plaintiff's request for transfer is **DENIED** and Plaintiff's request for a video camera is **DENIED**.  Any portions of these motions not addressed by the Court may be renewed by the Plaintiff if the Plaintiff so wishes.  The Court advises that the Plaintiff must make the relief sought and any basis therefore clear and understandable to the Court in any such renewals.  Furthermore, the caption of any motion filed by the Plaintiff should

accurately reflect the relief sought therein.

6. The Clerk is instructed to mail a copy of this Order to officials at Marion Correctional Institution so that such officials can comply with the Court's Order to disconnect Plaintiff's ventilation unit in his cell in accordance with the terms of this Order while this matter is pending or until the Court orders otherwise.

**IT IS SO ORDERED**.

Signed: May 30, 2019

Frank D. Whitney
Chief United States District Judge