UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-00091-FDW

| BRICE CHRISTOPHER MOORE, | ) |
|---|---|
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) **ORDER** |
| | ) |
| H. CORPENING, et al. | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**THIS MATTER** is before the Court on the following:[1]

(1) Plaintiff's Motion to Make a Request for Defendants to do on Other Grounds that the Court Didn't Grant in the Answers to Plaintiff's Complaint; Motion for an Order to Reconsider Plaintiff Conditions [Doc. 21];

(2) Plaintiff's Motion to Make Marion Correctional to Disconnect Plaintiff Vents from his Cell Which the Court Order on 5-30-2019 and Marion Correctional Refuses to Comply and to Receive the Protection that Plaintiff Keep Pleading to the Courts for Protection for His Life [Doc. 22];

(3) Plaintiff's Motion for Finding of Contempt to Enforce for Further Relief to Ensure Compliance [Doc. 23];

(4) Plaintiff's Motion to be Transferred from Marion Correctional to H-CON Higher Security Lock-Up Facility for Plaintiff's Safety. Reasons Stated Below. [Doc. 25];

---

[1] The Plaintiff has also filed a "Declaration of Motion to Memorandum of Law" and Motion to Appoint Counsel in a separate action, Civil Case No. 1:19-cv-00201-FDW, in which the Plaintiff seeks the same relief he seeks in the instant case based on the same alleged facts.

1

(5) Plaintiff's Motion to Have Ventilation System Tested for Bacteria in E-Unit Restrictive Housing. And Not Focussing [*sic*] on the Expense for an Ongoing Inhumane Condition of Bacteria Exiting Out of the Ventilation System [Doc. 26];

(6) Plaintiff's Motion for Transfer for Plaintiff Health from Fumes of Fecals in the Ventilation System and Administrative Refusing Court Orders by Trying to Take an Easy Way Out, When There is Several Solutions to Resolve the Problem [Doc. 27];

(7) Plaintiff's Motion for Transfer to H-CON for the Reasons of Thomas Hamilton Refusing to Disconnect Plaintiff's Vents from His Cell Location, and the Courts Not Having the Vents Tested Has Continue to Place the Plaintiff in Extreme Danger. Plaintiff is Already Constantly Sick from the Fumes and Continues to be Sick [Doc. 28];

(8) Plaintiff's Motion for Transfer to H-CON Maximum Security [Doc. 29];

(9) Plaintiff's Motion to the Court to Have Plaintiff Transferred While Case is Pending to H-CON; for the Reasons of Constant Retaliations from Thomas Hamilton and his Officials in Concert with Him; and the Lost [*sic*] of Plaintiff Personal Property in There [*sic*] Possession; and the Ventilation Problem Still [Doc. 34]; and

(10) Plaintiff's Motion Only to Verify That I Need to be Transferred for my Health Seriously [Doc. 35].

## I. BACKGROUND

Pro se Plaintiff Brice C. Moore ("Plaintiff") is a prisoner of the State of North Carolina, currently incarcerated at Marion Correctional Institution (MCI) in Marion, North Carolina. Plaintiff filed this action on March 22, 2019, pursuant to 42 U.S.C. § 1983, naming the following

as Defendants: (1) H. Corpening, identified as the Superintendent of MCI; (2) FNU Watkins, identified as the Assistant Superintendent of MCI; and (3) Thomas Hamilton, identified as Assistant Unit Manager at MCI. [Doc. 1 at 2].

Plaintiff brings a claim against Defendants complaining of his conditions of confinement in violation of his Eighth Amendment rights. [Doc. 1]. Plaintiff also brings a First Amendment retaliation claim against Defendant Hamilton. [Id.]. The Plaintiff's Complaint primarily revolves around the Defendants' response to and the Plaintiff's conditions of confinement created by the alleged placement of fecal matter in the ventilation system by certain gang members. As of this moment and since March 22, 2019, the Plaintiff has filed 17 (seventeen) motions with this Court

The Court previously reviewed one collection of motions filed by the Plaintiff, including Document Nos. 21, 22, 23, 25, 26, 27, 28 and 29, and noted that the primary relief sought by Plaintiff falls into three categories: (1) the Defendants' compliance with the Court's May 31, 2019 Order; (2) the testing of the ventilation system in Plaintiff's housing unit for bacteria; and (3) transfer to Polk Correctional Institution's high-security maximum control unity (HCON) in Butner, North Carolina.[2] The Court's May 31, 2019 Order ordered, among other things, that Plaintiff's action survived initial review, and directed the officials at Marion Correctional Institution to disconnect the Plaintiff's ventilation unit in accordance with the terms of that Order.

The Court, however, was without sufficient information to efficiently and collectively rule on Plaintiff's motions. The Court, therefore, ordered Defendants to respond to Plaintiff's motions, specifically but not limited to these three categories of relief enumerated by the Court. Defendants

---

[2] The Court notes that Plaintiff makes nearly innumerable requests for other actions by the Court and other, often random, irrelevant and/or impossible, relief. The Court, however, cannot and will not respond in kind to all these requests. To do so would profoundly waste judicial resources and disserve the many other cases on this Court's docket. Rather, the Court will address directly the predominate motions and summarily deny the other relief sought by Plaintiff.

were also ordered to include in their response a sworn statement by Defendant Corpening, or other official at Marion Correctional Institution with sufficient knowledge and authority, regarding: (1) exactly what measures have or have not been taken at MCI to comply with the Court's May 31, 2019 Order [Doc. 17]; (2) why such measures were or were not taken; (3) when such measures were taken; (4) the current state of the Plaintiff's prison cell and ventilation system feeding his cell; and (5) any other information necessary or proper for the Court to consider in relation to the Defendants' compliance with the Court's May 31, 2019 Order. [Doc. 30 at 2-3]. The Court also "<u>strongly</u> cautioned" the Plaintiff "against filing further documents with the Court that seek the same relief sought in other filings with the Court, whether they have been ruled on or not, or provide the same information that has been provided in previous filings." [<u>Id.</u> at 3]. The Plaintiff was also warned "that should he continue to file redundant or duplicative documents with the Court he may be required to seek leave of court before he will be allowed to file anything further." [<u>Id.</u>].

## II. THE PARTIES' RESPONSES

The Defendants responded to the Court's Order related to Plaintiff's eight motions and submitted therewith the Affidavit of Hubert A. Corpening. [Docs. 31, 31-1]. The Plaintiff replied to Defendant's response. [Doc. 33]. The Plaintiff has also, in direct contravention of the Court's warnings [<u>see</u> Doc. 30], filed two more motions with the Court seeking the same relief already sought in Plaintiff's other motions and again providing redundant and duplicative information. The Plaintiff continues to demonstrate a complete disregard for the judicial process and for the judicial resources of this Court. In accordance with the Court's previous Order, the Court will order that Plaintiff must seek leave of Court before he may file any further documents with the Court in this matter. This means that Plaintiff must move to file any and all documents he wishes to file in this matter, stating the grounds for their filing, and attach to his motion a copy of the

document he seeks to file. Any motions to submit documents again seeking redundant or duplicative relief and/or presenting the same information already repeatedly presented to the Court will be summarily denied.

## III. PLAINTIFFS' MOTIONS

Plaintiff seeks various injunctive relief. In the first eight motions referenced [Docs. 21, 22, 23, 25, 26, 27, 28, 29], Plaintiff's requests primarily the following three things: (1) the Defendants' compliance with the Court's May 31, 2019 Order; (2) the testing of the ventilation system in Plaintiff's housing unit for bacteria; and (3) transfer to Polk Correctional Institution's high-security maximum control unity (HCON) in Butner, North Carolina. The Court has already addressed and denied previous motions by Plaintiff seeking transfer and seeking bacterial testing of the ventilation units. [Doc. 17 at 12-13]. Plaintiff has not presented any new evidence or information warranting a different result. As such, the motions, to the extent they again seek this relief, will be denied.

The Court now turns to Plaintiff's motion to enforce the Court's May 31, 2019 Order. A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the

absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009). The Court should balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant. The balance of harm evaluation, however, should precede the determination of the degree by which the plaintiff must establish the likelihood of success on his part. Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 813-14 (4th Cir. 1991). "Until that balance of harm has been made, the district judge cannot know how strong and substantial must be the plaintiff's showing of 'likelihood of success.'" Id. at 814 (citation omitted).

In the Order at issue, the Court stated, in pertinent part:

> Here, Plaintiff alleges significant, worsening and ongoing physical suffering as a result of his alleged exposure to fecal bacteria in the air he breathes. Plaintiff requests the simple result of disconnecting the ventilation unit feeding his cell. The Court sees little to no harm suffered by Defendants in accommodating Plaintiff's request. As such, because failing to grant an injunction may cause Plaintiff substantial further harm and because little to no harm will be suffered by Defendants in granting the request, the Plaintiff need not show a substantial likelihood of success on the merits. The Plaintiff's allegations here, which if true, allow Plaintiff's Complaint to proceed past initial review, are enough under the specific facts and circumstances of this case. Further, the Court sees no public consequence to affording Plaintiff this specific relief while this matter is pending adjudication. The Court, therefore, will grant Plaintiff this injunctive relief in accordance with the terms of this Order. While the Court lacks sufficient information to make an overly technical and specific order regarding the Plaintiff's request, the Court orders MCI to disconnect Plaintiff's ventilation unit and cease the flow of potentially infected air into Plaintiff's cell. The Court also orders that the officials at MCI shall implement other measures to allow for the circulation of air in Plaintiff's cell should they prove necessary.

[Doc. 17 at 11-12].

In Defendants' response to the Court's order directing Defendants to respond to Plaintiff's

6

eight motions, the Defendants enumerated how the officials at MCI have attempted to comply with the Court's May 31, 2019 Order, citing the Affidavit of Hubert A. Corpening. The Defendants state:

> After examining the matter, it was determined that removing one cell from the larger ventilation system was not feasible. Corpening Aff. ¶ 21. The ventilation system at Marion is interconnected, meaning all vents providing air to individual cells stem from the same unit at the back of the facility (upstream) and air pushed out through the vents (flowing downstream). Id. ¶ 22. Because the system is interconnected, disconnecting one cell from the ventilation system would prevent air from flowing to other cells located further downstream. Id. ¶ 23. Furthermore, any attempt to reconfigure the ventilation system, even if logistically feasible, would require significant construction and be highly disruptive to prison operations, including creating a security concern, particularly when balanced against the allegations of a foul order in Plaintiff's cell that only he is able to smell. Id. ¶ 24.

[Doc. 31 at 2]. Defendants provide that a "good alternative exists to move Plaintiff to the cell furthest upstream," because "[t]his would allow air from the main unit to reach that cell first without passing through any other cells in transit." [Id. at 2 (citing Corpening Aff. ¶¶ 25, 26)]. It would, therefore, "be physically impossible for anyone to introduce a foul[-]smelling substance into the ventilation system from some other cell and for that odor to travel downstream into Plaintiff's cell through the ventilation system." [Id. (citing Corpening Aff. ¶ 27)]. Plaintiff has been offered this remedy, but "specifically declined to move to this particular cell, believing it also had the foul odor." [Id. (citing Corpening Aff. ¶ 28)].

In his reply, the Plaintiff largely disputes the veracity of Defendant Corpening's Affidavit and rehashes many of the same allegations and arguments previously presented to the Court.[3] Further, the Plaintiff provides no meaningful response to the solution of moving Plaintiff to the

---

[3] The Plaintiff, in his reply, for the first time now requests that the Court order Defendants to glue a plastic plate over the vent feeding his cell to stop the air flow and to provide Plaintiff with a fan. [Doc. 33 at 3]. New relief is not properly requested in a reply brief and the Court will not further address this request.

cell furthest upstream to make the introduction of fecal matter upstream to Plaintiff's cell a physical impossibility. [See Doc. 33 at 3-4]. The Plaintiff, however, refuses to avail himself of this logical opportunity. As such, given the balance of all the factors and the logistical and financial difficulty and/or impossibility of enforcing the Court's May 31, 2019 Order, the Plaintiff's motions, to the extent they seek its specific enforcement will be denied. Instead, the Warden will be directed to again offer the Plaintiff the opportunity to move to the cell furthest upstream as more fully described in Defendants' response. [See Doc. 31 at 2].

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiff's motions [Docs. 21, 22, 23, 25, 26, 27, 28, 29] are **DENIED** insofar as any relief sought therein was expressly denied in accordance with the terms of this Order. Any other relief sought in the enumerated motions not expressly denied herein is also **DENIED**.

(2) Plaintiff's motions [Docs. 34, 35] are **DENIED** as duplicative and having been filed in violation of the previous order of this Court. If Plaintiff wishes to present any new and original requests for relief to the Court, he shall first move to file the document, which shall contain only new and original requests, with the Court in accordance with the terms of this Order.

(3) Plaintiff shall seek leave of Court to file any further documents in this matter in accordance with the terms of this Order. If the Plaintiff attempts to file any further documents in this matter without seeking the proper leave, any such documents will be returned to the Plaintiff, unfiled.

(4) The Clerk is directed to mail a copy of this Order to the Warden at Marion Correctional Institution.

Signed: July 30, 2019

Frank D. Whitney
Chief United States District Judge